UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SUSAN ARDITO, | ) | Case No. CV 10-9181 JC |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND |
| v. | ) | ORDER OF REMAND |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | ) | |

## I. SUMMARY

On December 9, 2010, plaintiff Susan Ardito ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; December 13, 2010 Case Management Order, ¶ 5.

///

1    Based on the record as a whole and the applicable law, the decision of the
2 Commissioner is REVERSED AND REMANDED for further proceedings
3 consistent with this Memorandum Opinion and Order of Remand.

**II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE
DECISION**

On June 1, 2006, plaintiff filed applications for Supplemental Security
Income benefits and Disability Insurance Benefits.  (Administrative Record
("AR") 62, 104, 107).  Plaintiff asserted that she became disabled beginning on
April 1, 2002.  (AR 62).  The ALJ examined the medical record and heard
testimony from plaintiff (who was represented by counsel) and a vocational expert
on January 28, 2008.  (AR 1073).

On April 21, 2008, the ALJ determined that plaintiff was not disabled
through the date of the decision.  (AR 62).  Specifically, the ALJ found:
(1) plaintiff suffered from the following severe impairments:  depression, anxiety,
lumbar degenerative disc disease and plantar fasciitis (AR 64); (2) plaintiff's
impairments, considered singly or in combination, did not meet or medically equal
one of the listed impairments (AR 66); (3) plaintiff retained the residual functional
capacity to lift and carry 10 pounds frequently and 20 pounds occasionally, stand
and walk two to four hours out of an eight-hour workday with occasional climbing
(AR 67); (4) plaintiff could perform her past relevant work (AR 71); (5) there are
jobs that exist in significant numbers in the national economy that plaintiff could
also perform, specifically final assembler and table worker (AR 71-72); and
(6) plaintiff's allegations regarding her limitations were not credible (AR 69).

The Appeals Council denied plaintiff's application for review.  (AR 9).

**III.    APPLICABLE LEGAL STANDARDS**

**A.    Sequential Evaluation Process**

To qualify for disability benefits, a claimant must show that she is unable to
engage in any substantial gainful activity by reason of a medically determinable

physical or mental impairment which can be expected to result in death or which
has lasted or can be expected to last for a continuous period of at least twelve
months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.
§ 423(d)(1)(A)).  The impairment must render the claimant incapable of
performing the work claimant previously performed and incapable of performing
any other substantial gainful employment that exists in the national economy.
Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C.
§ 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step
sequential evaluation process:

(1)  Is the claimant presently engaged in substantial gainful activity?  If
so, the claimant is not disabled.  If not, proceed to step two.

(2)  Is the claimant's alleged impairment sufficiently severe to limit
the claimant's ability to work?  If not, the claimant is not
disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment, or combination of
impairments, meet or equal an impairment listed in 20 C.F.R.
Part 404, Subpart P, Appendix 1?  If so, the claimant is
disabled.  If not, proceed to step four.

(4)  Does the claimant possess the residual functional capacity to
perform the claimant's past relevant work?  If so, the claimant
is not disabled.  If not, proceed to step five.

(5)  Does the claimant's residual functional capacity, when
considered with the claimant's age, education, and work
experience, allow the claimant to adjust to other work that
exists in significant numbers in the national economy?  If so,
the claimant is not disabled.  If not, the claimant is disabled.

///

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV.    DISCUSSION**

Plaintiff argues that the ALJ erred in evaluating the opinions of Dr. Andrew Rah, one of plaintiff's treating physicians. (Plaintiff's Motion at 2-7). The Court agrees. As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

4

## A.    Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir.), as amended (1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

A treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  An ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id.  "The ALJ must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct."  Id.; see Thomas v. Barnhart,

278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings).  "Broad and vague" reasons for rejecting a treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir.1989).

**B.**    **Analysis**

On January 17, 2008, Dr. Rah completed a "Physical Residual Functional Capacity Assessment Form" in which he opined that (i) plaintiff could sit for no more than 3 hours, stand for no more than two hours, and walk for no more than one hour in an eight-hour work day; (ii) plaintiff could sit, stand or walk continuously for no more than one hour without changing positions; (iii) plaintiff could lift no more than ten pounds occasionally; (iv) plaintiff could not be expected to work more than three straight days at a time; and (v) plaintiff's symptoms were often severe enough to interfere with plaintiff's attention and concentration.  (AR 928).

The ALJ provided several reasons for rejecting Dr. Rah's opinions.  First, the ALJ rejected Dr. Rah's opinions in part "based on length, nature and/or extent of [the] examining physicians' [sic] relationship to [plaintiff]" and "area of specialization." (AR 69).  Such broad and vague reasons, however, are insufficient to reject Dr. Rah's opinions.  McAllister, 888 F.2d at 602.  Here, the ALJ failed to explain precisely how the length, nature and/or extent of Dr. Rah's treatment of plaintiff, or the doctor's area of specialization undermined the treating physician's medical opinions.  Moreover, substantial evidence in the record suggests that Dr. Rah's treating relationship with plaintiff was far from limited in length, nature and extent.  As the ALJ noted, Dr. Rah treated plaintiff for over five years.  (AR 65).  The record contains approximately two hundred pages of medical records which substantiate plaintiff's extensive treatment history with Dr. Rah. (AR 158-204, 743-896, 928, 936).

6

Next, the ALJ wrote that Dr. Rah's opinions "appear to be based primarily on [plaintiff's] subjective statements" (AR 70), but did not identify which of Dr. Rah's opinions should be discredited on such basis. The ALJ also stated that "the underlying documentation from the treating source provided in the record reveals little, if any, objective observation of signs or symptoms or administration of an appropriate diagnostic examination along with a description of results." (AR 69, 70). Again, the ALJ provides no further explanation for this assertion which, in any event, is belied by the medical record. For example, Dr. Rah's progress reports reflect that the treating physician conducted a physical examination almost every time he saw plaintiff. (AR 744, 749, 752, 754-55, 764, 767, 774, 778, 790, 795, 800, 808, 814, 818, 822, 824, 833, 841, 850, 853, 858, 865). In addition, as the ALJ elsewhere noted, Dr. Rah's records contained "[a] discography of [plaintiff's] lumbar spine" which "showed evidence of discogenic pain," and an MRI which "revealed a 3-mm protrusion" in plaintiff's spine. (AR 65; see AR 179, 761). Again, such broad and vague reasons for discrediting Dr. Rah's opinions are insufficient.

The ALJ also wrote that plaintiff's "relevant medical records" – presumably Dr. Rah's treatment notes for plaintiff – "show that the treating physician responded with limited and conservative treatment. Such treatment is inconsistent with the medical response that would be expected if the symptoms and limitations were as severe as described by Dr. Rah." (AR 69-70). While evidence of a physician's "limited and conservative treatment" may properly discredit the physician's inconsistent opinions that a claimant suffered significant limitations, see Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001), here, Dr. Rah's progress notes for plaintiff reflect treatment that is anything but "limited and conservative." In short, Dr. Rah (i) recommended that plaintiff undergo lumbar disk replacement surgery to alleviate plaintiff's back pain (AR 796, 808, 814, 850, 862); (ii) prescribed plaintiff narcotic and other pain relievers including Tylenol

4,[1] Norco[2] and Neurontin,[3] as well as Soma[4] (a muscle relaxer), Naprosyn[5] (a nonsteroidal anti-inflammatory drug (NSAID)), and Ambien[6] (for insomnia) (AR 800, 825, 862); (iii) recommended that plaintiff be provided with a lumbar support (AR 854); and (iv) referred plaintiff to acupuncture treatment (AR 825, 841, 850, 862), Southland Pain Management Center for "chronic pain management" (AR 854, 858), and a physical therapist for pool therapy (which was increased over time) (AR 819, 850, 854). Dr. Rah also referred plaintiff for psychiatric evaluation and, consequently, adopted the evaluator's recommendation that plaintiff receive "psychiatric treatments in the form of psychotropic medications and psychotherapeutic treatments." (AR 841, 853, 858). Dr. Rah opined that such psychiatric treatment was indicated for plaintiff's symptoms of anxiety and depression which were caused by plaintiff's "chronic pain and disability." (AR 853).

In light of the volume of the medical evidence, it may be the case that the ALJ's errors stem from an inadvertent failure to consider the records from Dr. Rah

---

[1]"The combination of acetaminophen and codeine [in Tylenol with Codeine #4] is used to relieve moderate to severe pain." Tylenol with Codeine #4, Drug Information Online, available at http://www.drugs.com/mtm/tylenol-with-codeine-4.html.

[2]"Norco is used to relieve moderate to severe pain." Norco, Drug Information Online, available at http://www.drugs.com/mtm/norco.html.

[3]"Neurontin is also used to treat nerve pain . . . ." Neurontin, Drug Information Online, available at http://www.drugs.com/neurontin.html.

[4]"Soma is a muscle relaxer that . . . is used together with rest and physical therapy to treat injuries and other painful musculoskeletal conditions." Soma, Drug Information Online, available at http://www.drugs.com/mtm/soma.html.

[5]"Naprosyn is in a group of drugs called nonsteroidal anti-inflammatory drugs (NSAIDs)." Naprosyn, Drug Information Online, available at http://www.drugs.com/naprosyn.html.

[6]"Ambien is used for the short-term treatment of insomnia . . . ." Ambien, Drug Information Online, available at http://www.drugs.com/ambien.html.

or correctly to attribute Dr. Rah as the source of such records. More specifically, the Court notes that in evaluating Dr. Rah's opinions, the ALJ references only Exhibits 2F and 22F (AR 65, 69) which contain less than a year of Dr. Rah's treatment records for plaintiff. The ALJ does not directly or indirectly reference in connection with his discussion of Dr. Rah's opinions, Exhibit 18F which contains over 100 pages and over eight years of Dr. Rah's records for plaintiff.[7] (See AR 65, 69, 743-896). The ALJ's incorrect characterization of the medical evidence based on what appears to be a failure to consider or to properly attribute all of the relevant medical evidence calls into question the validity of both the ALJ's evaluation of Dr. Rah's opinions and the ALJ's decision as a whole. See, e.g., Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support an adverse credibility determination); see also Valenzuela v. Astrue, 2007 WL 2693679 *1 (9th Cir. Sept. 10, 2007) (unpublished opinion) (finding ALJ's credibility determination unsupported by substantial evidence where it was based in part on "inaccurate characterization" of claimant's testimony);[8] Lesko v. Shalala, 1995 WL 263995 *7 (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical record" found to constitute reversible error).

Remand is warranted to ensure that the ALJ considers and properly attributes to Dr. Rah all of Dr. Rah's medical records and reevaluates Dr. Rah's opinions based upon such consideration and the other evidence in the record.

///

---

[7]Exhibit 18F also includes evaluations of Dr. Richard Masserman (AR 721-42) and is referenced by the ALJ in his discussion of Dr. Masserman's opinions. (AR 65, 69).

[8]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

**V.   CONCLUSION**[9]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[10]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  June 3, 2011

                                        /s/
                              _____
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE

---

[9]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[10]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989),